# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| BRADLEY GARRETT, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-3363 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

### MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his conviction and thirty-year sentence for murder. Respondent filed a motion for summary judgment (Docket Entry No. 20), to which petitioner filed a series of responses (Docket Entries No. 21, 22, 23, 24).

Having reviewed the motion, the responses, the record, the pleadings, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Background and Claims*

A jury found petitioner guilty of murder and assessed a thirty-year sentence on February 12, 2016. The conviction was affirmed on appeal, and discretionary review was refused on August 23, 2017. *Garrett v. State*, No. 01–16–00162–CR, slip op. (Tex. App. – Houston [1st Dist.] 2017, pet. ref'd). Petitioner's application for state habeas relief, filed

with the trial court on October 27, 2017, was denied by the Texas Court of Criminal Appeals on February 7, 2018.

Petitioner filed the pending petition for federal habeas relief on or about October 30, 2017. The Court denied respondent's motion to dismiss for failure to exhaust, and ordered the case briefed on the merits. The pending motion for summary judgment addresses the merits of petitioner's habeas claims, which are as follows:

1. Ineffective assistance of trial counsel;

2. Insufficiency of the evidence;

3. The State's use of perjured testimony;

4. The State's violation of *Brady*;[1] and

5. *Batson*[2] error and an improper jury shuffle.

Respondent argues that petitioner's second and fifth habeas claims – insufficiency of the evidence and jury errors – are unexhausted and procedurally barred, and that the remaining claims have no merit.

*Factual Background*

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction.

> Appellant occasionally worked as an unarmed security guard at the H2O after-hours nightclub in southwest Houston. In the early morning hours of June 22,

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

2014, the complainant Clark Scott, Maurian Sanders, and Edward Woodrow arrived at the club. All three men had been drinking and smoking PCP, both before they arrived at H2O and outside of the club. The men stayed at the club for about three hours, until around 7:00 a.m., when Sanders decided that he wanted to leave. Outside the club, Scott and Sanders were laughing and making jokes, and Woodrow began recording them with his cell phone directly in front of the door to H2O. Stephen Freeman, an armed security guard at H2O, asked Woodrow to stop recording.

Freeman's disagreement with the men over the recording escalated into a physical fight when appellant intervened to assist Freeman and punched Sanders. During the course of this fight, Freeman passed his gun to appellant. Sanders ran from the scene and informed security guards, who were directing traffic at a nearby church, of the situation at H2O.

Layla Wuttke, who worked at H2O collecting entrance fees and occasionally bartending, witnessed the altercation and informed the club's manager. When she returned outside, Scott was yelling at Freeman and appellant. Wuttke decided to go home and climbed into her car, which was parked near the front door of H2O. Scott continued yelling, and Freeman and appellant slammed Scott down onto the hood of Wuttke's car before Wuttke could close the car door. With Wuttke watching through the front windshield, appellant held Scott down by the back of his neck, pulled out a gun, and shot Scott in the head. Appellant then turned and started shooting at Woodrow, who was shot four times in both legs as he tried to flee, but survived. At some point, appellant left the scene, possibly through the back exit of H2O. Wuttke got out of the car and hid behind a cement block until the police arrived.

Bill Featherston, one of the security guards working at the nearby church, called 9-1-1 after Sanders ran up to him, and, while he was on the phone, he heard the shooting. Featherston and his supervisor ran to H2O after the shooting ended and found Wuttke, who was uninjured, sitting against a pillar outside the club; Scott, who was "dead for sure," lying on the ground next to Wuttke's car; and Woodrow, who was lying wounded in the parking lot.

Wuttke, Sanders, and Woodrow all viewed a photo-array that included appellant's picture, and all three identified appellant as being involved in the incident. Wuttke positively identified appellant at trial as the shooter, and Woodrow identified appellant at trial as possessing a gun during the incident.

Sanders and Wuttke testified that appellant had been wearing a baseball cap during the altercation. Houston Police Department Officer M. Condon testified that the crime scene unit recovered a baseball cap from the scene. Bao Tran Nguyen, a forensic analyst with the Houston Forensic Science Center, supervised an analyst in training who swabbed the baseball cap recovered from the scene for later DNA analysis. The analysts swabbed the sweat band, both sides of the bill, and the adjuster of the cap for possible contact DNA evidence. Nguyen then took a cutting from the swab and secured that cutting in a freezer for the DNA technician.

Clay Davis, a forensic DNA analyst with the Houston Forensic Science Center, also testified. He first testified generally concerning the steps of DNA analysis, including extraction of the DNA from the cells of the sample, quantification, amplification, detection, and interpretation. He then testified that the samples in this case underwent those steps. Davis analyzed a portion of the swabs from the baseball cap recovered at the scene. Davis completed a report of his analysis of the swab from the cap compared to appellant's known DNA profile, and the State offered this report into evidence.

Defense counsel objected to Davis's lab report. Counsel first objected because the report referenced appellant's known buccal swab sample, but there had been no testimony to establish chain of custody concerning that sample. Counsel also objected based on hearsay. The State represented that it would call the homicide investigator who had taken the buccal swab from appellant and submitted it to HPD, where it was tagged as evidence. The trial court conditionally admitted the lab report "subject to the testimony of the officer that took the buccal swab." Defense counsel did not object at this point to the lab report or to Davis's testimony on the basis of the Confrontation Clause of the Sixth Amendment.

Davis testified that appellant could not be excluded as a contributor to the major component of the DNA profile recovered from the baseball cap. Davis also testified that the probability that a random individual would be included as a possible contributor to the major component of the DNA profile was 1 in 190 quintillion for Caucasians, l in 7.3 quintillion for African-Americans, and 1 in 12 sextillion for southwest Hispanics. Davis stated that, unlike appellant, Scott was excluded as a possible contributor to the major component of the DNA profile found on the baseball cap. The minor component of this DNA profile was "insufficient for comparison."

Before testimony resumed the next morning, defense counsel urged an objection to Davis's testimony and report based on the Confrontation Clause. Specifically, defense counsel stated that she had received the "certificates of analysis" concerning the DNA testing, which indicated that two Houston Forensic Science Center analysts, Kristina Blackmon and Maria Rumble, had performed the DNA extraction and amplification tests on the baseball cap and appellant's buccal swab. Defense counsel argued that whether these tests were properly performed would affect the DNA results and that she had not had an opportunity to cross-examine these analysts, which violated appellant's constitutional confrontation rights.

The State responded that it intended to call both Blackmon and Rumble to testify. The State also suggested that it could recall Davis, who would testify that Blackmon and Rumble were not involved in the analysis of the DNA profiles, but instead they "engage[d] in batch testing so they take samples, several samples on trays and really take it from one machine to another. It's the machine that does the analysis and develops the data." The trial court deferred ruling on defense counsel's objections because the State had not yet rested its case-in-chief and might call Blackmon and Rumble to testify, which would eliminate any Confrontation Clause issue.

The State recalled Officer Condon, who testified that he had obtained a buccal swab from appellant after he was arrested. After Officer Condon testified again, the trial court addressed defense counsel's confrontation objection and stated, "I'm satisfied that your objection goes to the weight but not the admissibility of the DNA report." The trial court overruled the Confrontation Clause objection. The State rested without calling Blackmon or Rumble.

The jury found appellant guilty of the offense of murder and assessed his punishment at thirty years' confinement.

*Garrett*, slip op. at 2–7.

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA,

5

federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility

> fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

7

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### ***Procedural Default and Bar***

In his second and fifth habeas claims, petitioner complains of insufficiency of the evidence, error under *Batson v. Kentucky*, 476 U.S. 79 (1986) due to the State's use of peremptory strikes for racial discrimination, and an unlawful jury shuffle. Respondent argues that these claims were not raised in the state court proceedings and are thereby unexhausted, procedurally defaulted, and barred from consideration by this Court.

It is well settled that federal review of a habeas claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Harris v. Reed*, 489 U.S. 255, 265 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). Where a state court has explicitly relied on a procedural bar, a petitioner may not obtain federal habeas

relief absent a showing of cause for the default and actual prejudice that is attributable to the default. *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

Petitioner challenged the sufficiency of the evidence on state collateral review. The state habeas court rejected the claim, finding that petitioner's habeas "challenges to the sufficiency of the evidence to support his conviction are not cognizable. *Ex parte Christian*, 760 S.W.2d 659 (Tex. Crim. App. 1988)." *Ex parte Garrett*, at 54. Texas state courts have long held that sufficiency of the evidence cannot be challenged in a post-conviction writ of habeas corpus. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); *see also Ex parte McClain*, 869 S.W.2d 349, 351 (Tex. Crim. App. 1994). The Fifth Circuit Court of Appeals recognizes and upholds this state procedural bar. *See West v. Johnson*, 92 F.3d 1385, 1398, n.18 (5th Cir. 1996) ("Although the Court of Criminal Appeal's denial of habeas relief stated no reasons, that court, as we have held, has long held that the sufficiency of the evidence may only be raised on direct appeal, and may not be raised on state habeas."); *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994) (recognizing that under Texas law a claim regarding sufficiency of the evidence may be raised on direct appeal but not on collateral review). Petitioner did not challenge the sufficiency of the evidence on direct appeal; consequently, the issue is procedurally defaulted and barred from consideration at this juncture.

Petitioner further failed to raise on direct appeal his claims regarding jury error. Although he raised the claims on state collateral review, the state trial court found that his

9

*Batson* and jury shuffle claims were claims of record that should have been raised on direct appeal:

> 21. The applicant did not challenge the State's use of peremptory strikes on direct appeal.
>
> 22. The applicant did not challenge the jury shuffle prior to voir dire on direct appeal.

*Ex parte Garrett*, at 53. The state trial court made the following relevant conclusions of law:

> 7. The applicant has waived his claim challenging the State's use of peremptory strikes because he could have raised this issue on direct appeal.
>
> 8. The applicant has waived his claim challenging the jury shuffle prior to voir dire because he could have raised the issue on direct appeal.

*Id.*, at 54 (case citations omitted). The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

The state court found that petitioner's *Batson* and jury shuffle claims were waived because he failed to raise them on direct appeal. Consequently, these claims are procedurally defaulted and barred in this Court. However, a petitioner may overcome the procedural default rule if he can show cause for his default and "prejudice attributed thereto," or if he can demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice" in that he is actually innocent of the underlying offense. *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Smith v. Johnson*, 216 F.3d 521, 523–24 (5th Cir. 2000); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).

Petitioner presents no such arguments to this Court, and fails to establish cause and prejudice regarding the default or a fundamental miscarriage of justice. Accordingly, his claims for insufficient evidence, *Batson* error, and an unlawful jury shuffle are barred from consideration by this Court.

Respondent is entitled to summary judgment dismissal of these claims premised on procedural default and bar.

### *Ineffective Assistance of Trial Counsel*

*Standards*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id*. at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor

of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id*.

*Analysis*

Petitioner claims that trial counsel was ineffective in that he did not prepare for trial in light of the State's untimely disclosure of *Brady* materials. Petitioner's argument lacks merit in the first instance as the state court rejected his *Brady* claims. This Court agrees with the state court's determination, *infra*.

In rejecting petitioner's *Brady* and ineffective assistance claims, the state court on collateral review made the following relevant findings of fact:

> 8. The applicant fails to identify a specific witness trial counsel should have researched.
>
> 9. The applicant fails to show what trial counsel would have learned by conducting additional research of witnesses.
>
> 10. The applicant fails to show what trial counsel would have accomplished with additional witness preparation.
>
> \* \* \* \*
>
> 15. At the beginning of trial, the State represented that it had provided the 911 calls in the case to trial counsel.
>
> 16. Trial counsel informed the Court that there was no outstanding discovery.
>
> 17. The applicant did not object to the admission of [the witness's] 911 call during trial.
>
> 18. The applicant fails to show that the State withheld [the witness's] 911 call.
>
> 19. The applicant fails to identify a particular photograph the State allegedly withheld.
>
> 20. The applicant fails to identify a specific piece of evidence that the State allegedly lost.

*Ex parte Garrett*, at 52–53 (record citations omitted). The state court also made the following relevant conclusions of law:

3. The applicant fails to show trial counsel was ineffective for failing to conduct additional research of witnesses because the applicant fails to show what additional research would have revealed.

* * * *

5. In all things, the applicant fails to show he was denied the effective assistance of counsel at trial.

*Id.*, at 54 (citations omitted). The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Under the first prong of *Strickland*, a defendant must show that his trial counsel's performance was deficient in that it fell below an objective standard of reasonableness. 466 U.S. at 687. A reviewing court must indulge in a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance," *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002), and that "the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). Courts "must be highly deferential" to counsel's performance, and every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

Under the second-prong of the *Strickland* test, a defendant must show that his counsel's deficient performance prejudiced him. *Galvan*, 293 F.3d at 764. The defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687. A defendant must satisfy both prongs of *Strickland*; a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Id.* at 697.

Petitioner in this case establishes neither deficient performance nor actual prejudice. "[A] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Trottie v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2013) (internal quotation marks omitted). As explained by the Fifth Circuit Court of Appeals, "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001) (internal quotation marks omitted). To prevail on such a claim, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Conclusory allegations in support of a claim for ineffective assistance of counsel are insufficient to raise a constitutional issue. *Green v. Johnson*, 160 F.3d 1029, 1037, 1042 (5th Cir. 1998).

As reasonably and correctly determined by the state court on collateral review, petitioner's assertions regarding failure to investigate, omitted witnesses, and undisclosed or lost evidence are conclusory, speculative, and unsupported in the record. Petitioner fails to allege with specificity what additional investigation would have revealed or show how it would have altered the outcome of the trial. His conclusory and unsupported allegations of

15

deficient performance and prejudice are insufficient to raise a genuine issue of material fact precluding summary judgment, and he fails to meet his burden of proof under AEDPA.

The state court on collateral review rejected petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

### *Perjury*

Petitioner next alleges that the State relied on perjured testimony at trial. The state court on collateral review rejected the claim as subsumed by petitioner's impermissible habeas challenge to the sufficiency of the evidence. Even assuming petitioner's perjury claim were to stand as a separate claim, it would have no merit.

It is long settled that the prosecution may not knowingly use perjured testimony or allow perjured testimony to go uncorrected in a criminal prosecution. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To prove a due process violation in such a case, a petitioner must demonstrate (1) that the testimony in question was actually false, (2) that the prosecutor was aware of the falsity, and (3) that the testimony was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). Perjured testimony is material only when "there is any reasonable likelihood that the false testimony

could have affected the judgment of the jury." *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000).

Petitioner appears to argue that the prosecution's witnesses lied and presented inconsistent or contradictory evidence during trial. His arguments do not establish perjury. Contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between reports, written statements and the trial testimony of witnesses do not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). Moreover, petitioner's bald assertions that one or more witnesses lied and presented false testimony are unsupported by probative evidence in the record, and are insufficient to preclude summary judgment. *Id*.

The state court denied habeas relief on petitioner's claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### *Brady Error*

Petitioner claims that the State withheld exculpatory evidence and lost items of evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, he complains that the prosecution withheld evidence of a witness's 911 call to authorities and lost an unidentified photograph.

In rejecting this claim, the state court made the following relevant findings of fact on collateral review:

> 15. At the beginning of trial, the State represented that it had provided the 911 calls in the case to trial counsel.
>
> 16. Trial counsel informed the Court that there was no outstanding discovery.
>
> 17. The applicant did not object to the admission of [the witness's] 911 call during trial.
>
> 18. The applicant fails to show that the State withheld [the witness's] 911 call.
>
> 19. The applicant fails to identify a particular photograph the State allegedly withheld.
>
> 20. The applicant fails to identify a specific piece of evidence that the State allegedly lost.

*Ex parte Garrett*, at 52–53 (record citations omitted). The Texas Court of Criminal Appeals relied on these findings of fact in denying habeas relief. *Id.*, at cover.

To prevail on his *Brady* claim, petitioner must prove that the prosecutor suppressed or withheld evidence that was favorable and material to the defense. *Brady*, 373 U.S. at 87. Petitioner fails to meet this burden of proof. In particular, he fails to show that the State withheld or lost evidence. He presents no probative summary judgment evidence in support of his *Brady* claim, and his conclusory assertions are unsupported in the record.

The state court rejected petitioner's *Brady*-based claim and denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an

unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### *Evidentiary Hearing*

Having reviewed the pleadings and the proceedings held in state court as reflected in the state court records, the Court finds that an evidentiary hearing is unnecessary. Petitioner has not shown that he is entitled to an evidentiary hearing.

### *Conclusion*

The motion for summary judgment (Docket Entry No. 20) is GRANTED and this habeas lawsuit is DISMISSED WITH PREJUDICE. Any and all pending motions are DENIED AS MOOT. A certificate of appealability is DENIED.

Signed at Houston, Texas, on November 29, 2018.

_____
Gray H. Miller
United States District Judge